UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JONATHAN MIKKELSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAELS MANAGEMENT SERVICES LLC, et al., <br><br> Defendants. | Case No. 24-cv-09504-VKD <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO REMAND TO STATE COURT** <br><br> Re: Dkt. No. 8 |

Plaintiffs Jonathan and Alyssa Mikkelson and their minor children N.M., L.M., M.M., A.M., and E.M. (collectively, "plaintiffs" or "Mikkelsons"), move to remand this action to the Monterey County Superior Court. Dkt. No. 8. Defendants Michaels Management Services, LLC and the Michaels Organization, LLC (collectively the "Michaels defendants") and Monterey Bay Manager, LLC and Monterey Bay Military Housing LLC (collectively the "Monterey Bay" defendants) oppose the motion. Dkt. No. 11. The Court heard oral argument on April 22, 2025. Dkt. No. 22. Defendants appeared at the motion hearing; plaintiffs did not. At the hearing, defendant Professional Asbestos Removal Corporation ("PARC") stated its objection to the motion to remand.[1] As ordered by the Court (Dkt. No. 24), the parties filed a post-hearing joint

---

[1] Prior to PARC's appearance in this matter, the parties agreed to continue the hearing on plaintiffs' motion to remand to allow time for service of the complaint and summons on PARC and to provide PARC with an opportunity to participate in the motion to remand proceedings. *See* Dkt. Nos. 12, 14, 15. PARC subsequently appeared on April 4, 2025 and answered the complaint. Dkt. No. 20. At the April 22, 2025 motion hearing, PARC stated that because briefing on plaintiffs' motion closed by the time PARC appeared, PARC did not separately file a written opposition to the motion to remand or join the Michaels and Monterey Bay defendants' opposition to the motion. *See* Dkt. No. 22.

1  status report (Dkt. No. 26).

2  Upon consideration of the moving and responding papers, the oral arguments presented,

3  and the parties' post-hearing report, the Court denies plaintiffs' motion to remand.[2]

## I. BACKGROUND

On November 18, 2024, the Mikkelsons filed this action in the Monterey County Superior Court for personal injuries they claim they sustained as a result of toxic mold contamination in the home they leased while living at The Parks at Monterey, a privatized housing project on the former Fort Ord military installation in Monterey, California. Their complaint asserts twelve claims for relief based on state and/or common law: (1) negligence, (2) negligent maintenance of premises, (3) fraud, (4) negligent misrepresentation, (5) breach of contract, (6) breach of the covenant of quiet enjoyment, (7) nuisance, (8) breach of implied warranty of habitability, (9) statutory breach of warranty of habitability (California Civil Code §§ 1941, 1941.1, 1942.4), (10) wrongful eviction (California Civil Code § 789.3), (11) intentional infliction of emotional distress, and (12) unfair competition (California Business & Professions Code § 17200, *et seq.*). *See* Dkt. No. 27, Ex. C.[3]

The record reflects that, along with their complaint, on November 18, 2024 the Mikkelsons also filed applications for the appointment of a guardian ad litem for the five minor plaintiffs. *See* Dkt. No. 26 at ECF 2. The state court granted those applications on December 18, 2024. *Id.*

Meanwhile, counsel for the Michaels and Monterey Bay defendants says that he reviewed the state court's website on December 2, 2024 and learned of plaintiffs' complaint. Dkt. No. 1 ¶ 19; Dkt. No. 27 ¶ 4. He obtained a copy of the complaint from the state court on December 3, 2024. Dkt. No. 27 ¶ 4.

On December 30, 2024, before any defendant was served with process, the Michaels and

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 9. 21.

[3] The Court sua sponte sealed Mr. Desrochers's declaration filed in support of defendants' removal notice and directed him to file an amended redacted version of his declaration. Dkt. No. 25. This order cites to Mr. Desrochers's amended redacted declaration on the public docket (Dkt. No. 27).

1    Monterey Bay defendants removed the action to this Court, asserting federal question and

2    diversity jurisdiction, 28 U.S.C. §§ 1331, 1332.  *See* Dkt. No. 1; Dkt. No. 27 ¶ 5.

3        The record further reflects that following the removal of this action, the state court issued

4    summons on January 13, 2025.  *See* Dkt. No. 13 at ECF 10-14; Dkt. No. 26 at ECF 3.

5        Plaintiffs now move pursuant to 28 U.S.C. § 1447(c) to remand this case to the state court,

6    arguing that the Michaels and Monterey Bay defendants have not established a basis for either

7    federal question jurisdiction or diversity jurisdiction, and that the forum defendant rule prohibits

8    removal based on diversity jurisdiction in any event.

## II.    LEGAL STANDARD

Removal to federal court is proper where the federal court would have original subject matter jurisdiction over the complaint. 28 U.S.C. § 1441.  The removal statutes are strictly construed against removal and place the burden on the defendant to demonstrate that removal is proper.  *Moore-Thomas v. Alaska Airlines, Inc*., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992)).  Additionally, the Court has a continuing duty to determine whether it has subject matter jurisdiction.  Fed. R. Civ. P. 12(h).  A case must be remanded to the state court if it appears at any time before final judgment that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).

## III.   DISCUSSION

### A.    Federal Question Jurisdiction

Federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A claim "arises under" federal law if, based on the "well-pleaded complaint rule," the plaintiff alleges a federal claim for relief.  *Vaden v. Discovery Bank*, 556 U.S. 49, 60 (2009).  Defenses and counterclaims asserting a federal question do not satisfy this requirement.  *Id*.

"'[A] case can 'arise under' federal law in two ways.'"  *Negrete v. City of Oakland*, 46 F.4th 811, 816 (9th Cir. 2022) (quoting *Gunn v. Minton*, 568 U.S. 251, 257 (2013)).  "First and '[m]ost directly, a case arises under federal law when federal law creates the cause of action asserted.'"  *Id*. at 816-17 (quoting *Gunn*, 568 U.S. at 257).  "Second, under the substantial federal

question branch, 'even where a claim finds its origins in state rather than federal law,' the Supreme Court has 'identified a 'special and small category' of cases in which arising under jurisdiction still lies.'" *Id*. at 817 (quoting *Gunn*, 568 U.S. at 258). "Specifically, 'federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id*. (quoting *Gunn*, 568 U.S. at 258); *see also Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005).

### 1.     Claims Created by Federal Law

All of plaintiffs' asserted claims are based on California and/or common law. The Michaels and Monterey Bay defendants principally argue that plaintiffs' allegations implicate substantial federal interests. To the extent defendants may be understood to argue that plaintiffs' claims are created by federal law, they fail to persuade.

Defendants point out that the complaint includes allegations that defendants violated federal law (namely, the Military Housing Privatization Initiative ("MHPI"), 10 U.S.C. §§ 2871, *et seq*.), and defrauded the federal government. *See* Dkt. No. 11 at ECF 6 (citing Dkt. No. 27, Ex. C (Complaint ¶¶ 21-44)). Those allegations are discussed in a section of the complaint providing general background and context for the present lawsuit. Defendants argue that plaintiffs will rely on these allegations to prove their claims. However, defendants have not explained how or why that is so, or even if true, why such reliance compels the conclusion that federal law creates plaintiffs' claims for relief. For example, plaintiffs' third claim for relief for fraud is based on alleged false statements or omissions and falsified maintenance records, reportedly made or done by defendants in an effort to mislead *plaintiffs* (not the federal government or any federal agency or officer) about the actual condition of the subject premises. *See* Dkt. No. 27, Ex. C (Complaint ¶¶ 152-165). Defendants also assert, at a very high level, that the Parks at Monterey housing project was developed under the MHPI, and that the MHPI mandates the terms of the parties' lease agreement. However, defendants have not provided any analysis or authority explaining how or why the MHPI—or any other federal law—creates plaintiffs' claims for relief.

4

### 2. Substantial Federal Question

The Michaels and Monterey Bay defendants maintain that plaintiffs' claims arise under federal law because they raise substantial federal questions.[4] As noted above, "'federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Negrete*, 46 F.4th at 817 (quoting *Gunn*, 568 U.S. at 258). Plaintiffs do not contest the fourth factor, and acknowledge that their claims are capable of resolution by this Court without disrupting the federal-state balance approved by Congress. *See* Dkt. No. 13 at ECF 8. The Court agrees with plaintiffs that defendants have otherwise failed to show that this case meets any of the remaining requirements for federal question jurisdiction.

Defendants argue that plaintiffs present a substantial federal question because: (1) the complaint includes allegations that defendants violated federal law and defrauded the federal government; (2) the MHPI governed plaintiffs' lease and occupancy of the subject premises; and (3) plaintiffs availed themselves of "federal laws and procedures" by pursuing the lease's dispute resolution procedures. *See* Dkt. No. 11 at ECF 6-9. Defendants have failed to identify any federal issue that is "necessarily raised" by plaintiffs' claims. While defendants argue that plaintiffs' complaint, as a whole, raises issues concerning federal law (namely, the MHPI), defendants have not demonstrated that any issue concerning the MHPI (or any other federal law) is an essential element of any of plaintiffs' claims for relief. *See Negrete*, 46 F.4th at 819 ("Although this question would inevitably arise in this case and may involve a federal issue, it is not an issue that is necessarily raised within the meaning of *Grable* because it is not an 'essential *element*' of any of the officers' claims."). At the motion hearing, defendants asserted that this case will involve

---

[4] For the first time at the motion hearing, the Michaels and Monterey Bay defendants argued that plaintiffs artfully pled their claims to omit federal questions. As this issue was not squarely raised or developed in defendants' briefing, the Court declines to address it here, except to say that defendants have not shown that any federal law completely preempts plaintiffs' claims. As discussed below, defendants have also failed to demonstrate that plaintiffs' claims are necessarily federal in character, or that plaintiffs' claimed right to relief depends on the resolution of a substantial, disputed federal question. *See Arco Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of the State of Montana*, 213 F.3d 1108, 1113-14 (9th Cir. 2000) (discussing artful pleading rule).

issues concerning defendants' contractual obligations under their agreements with the federal government, including the procedures and standards set by those contracts. Even assuming that is true, defendants have not identified what federal question is raised by those contracts, or what interpretation of federal law is required to resolve a necessary element of plaintiffs' claims. To the extent defendants impliedly suggest that litigation of their compliance with their federal contracts may be necessary for their defense of this litigation, *see, e.g.,* Dkt. No. 5 at ECF 25, 26 (Seventh and Tenth Affirmative Defenses), "it is now settled law that a federal defense to a state law cause of action cannot confer federal question jurisdiction." *Negrete*, 46 F.4th at 820 (quotations and citation omitted); *see also Vaden*, 556 U.S. at 60.

Defendants' arguments that plaintiffs "availed themselves of federal law and procedures" when they pursued the dispute resolution process under their lease are not plausibly supported by the record. Defendants contend that plaintiffs followed the lease's dispute resolution procedures "with full knowledge that the process was established by federal law (i.e., the MHPI); that their FDR [Formal Dispute Resolution] claims would be heard and decided by a U.S. Army official; and that the decision of the U.S. Army official on the dispute would be final." Dkt. No. 11 at ECF 8. However, the dispute resolution portion of the lease expressly states that "[n]othing in this Dispute Resolution Process, or any decision rendered by the Deciding Authority shall prohibit a Tenant" from pursuing "disputes concerning rights and responsibilities set forth in the Lease" in "any adjudicative body with jurisdiction over the housing unit or claim in accordance with applicable state and/or federal law following completion of this Dispute Resolution Process. . . ." Dkt. No. 27 at ECF 97 (Lease, Schedule 3, sec. 10); *see also id*. at ECF 94 (Lease, Schedule 3, sec. 1 "Scope"). Additionally, a section of the lease titled "Governing Law," on its face, indicates that even where "laws of the State in which the Premises is located do not apply," the parties agreed that "the applicable State Landlord-Tenant law of the State in which the Premises is located, and the State common law interpreting such Landlord-Tenant law shall apply." *See* Dkt. No. 27 at ECF 90 (Lease, sec. K). Defendants have not demonstrated that plaintiffs' claims raise federal issues by virtue of the lease's dispute resolution procedures.

As defendants have not identified a federal issue that is necessarily raised, neither have

6

1  they identified any such issue that is actually disputed.  *Cf. Gunn*, 568 U.S. at 259 (issue of federal

2  patent law was "actually disputed" where issue was a "central point of dispute" on the merits of

3  plaintiff's legal malpractice claim); *Grable*, 545 U.S. at 315 (meaning of federal tax statute "is

4  actually in dispute; it appears to be the only legal or factual issue contested in the case.").

5     Defendants also fail to persuade that plaintiffs raise a "substantial" federal issue.

6  "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating

7  a serious federal interest in claiming the advantages thought to be inherent in a federal forum."

8  *Grable*, 545 U.S. at 313.  To meet this factor, "it is not enough that the federal issue be significant

9  to the particular parties in the immediate suit"; the "substantiality inquiry under *Grable* looks

10  instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.

11  Here, defendants argue that plaintiffs' complaint includes allegations about similar issues in

12  military housing projects across the nation. *See* Dkt. No. 11 at ECF 10 (citing Complaint ¶¶ 31-

13  44).  However, plaintiffs' claims in this action concern only the plaintiffs themselves and the

14  subject premises where they lived. *See* Dkt. No. 27, Ex. C (Complaint ¶¶ 115-263).

15     In sum, defendants have not demonstrated that this action is removable on the basis of

16  federal question jurisdiction.

17    **B.**  **Diversity Jurisdiction**

18     Federal district courts have diversity jurisdiction over civil actions in which the matter in

19  controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and is between

20  citizens of different states.  28 U.S.C. § 1332.  Plaintiffs state that the amount in controversy

21  exceeds the $75,000 threshold. *See* Dkt. No. 8 at ECF 11.  In their post-hearing joint status report,

22  the parties agree that plaintiffs reside in North Carolina, and that there is complete diversity of

23  citizenship. *See* Dkt. No. 26 at ECF 3.

24     While there is no dispute that the requirements for diversity jurisdiction are satisfied, it is

25  also undisputed that one of the removing defendants, Monterey Bay Manager, LLC, is a

26  corporation organized under the laws of California. *See* Dkt. No. 1 at ECF 5, n.1.  Additionally,

27  other documents filed by defendants (*see* Dkt. No. 11-2) indicate that one or more of the other

28  Michaels or Monterey Bay defendants—all of which are limited liability companies—have

7

members (including Monterey Bay Manager LLC) who are California citizens or corporations. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (for diversity jurisdiction purposes, "an LLC is a citizen of every state of which its owners/members are citizens.").[5]

      Plaintiffs argue that this case must be remanded to the state court because the Michaels and Monterey Bay defendants removed this action in violation of the "forum defendant rule." The forum defendant rule provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). The forum defendant rule "is a procedural requirement," and a violation of the rule is "a waivable non-jurisdictional defect" in removal. *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 942 (9th Cir. 2006). "Removal based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court." *Id*. at 940. "The need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought." *Id*. "Within this contextual framework, the forum defendant rule allows the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court." *Id*.

      The Michaels and Monterey Bay defendants argue that the forum defendant rule does not apply because they removed this action before any defendant was served with process—a so-called "snap removal." *See generally Lam Sing v. Sunrise Senior Mgmt., Inc.*, No. 23-cv-00733-WHA, 2023 WL 3686251, at *3 (N.D. Cal. May 26, 2023) (describing snap removal as "[t]he practice of circumventing application of the forum-defendant rule by removing before defendants are served[.]"). The Mikkelsons counter that at the time this action was removed, they could not have effected service on any defendant. Indeed, California procedural rules require a guardian ad litem to be appointed for minor plaintiffs under 14 years of age before summons is issued. *See* Cal. C.C.P. § 373(a); *Williams v. Superior Ct.*, 147 Cal. App. 4th 36, 46-47 (2007). Additionally,

---

[5] Although it was not one of the removing defendants, PARC also admits that it is a California corporation. *See* Dkt. No. 20 ¶ 12.

1  California law provides that service is to be made on corporations by "delivering a copy of the
2  *summons and the complaint*" by various means specified by statute. *See* Cal. C.C.P. § 416.10
3  (emphasis added). As discussed above, although the state court granted plaintiffs' guardian ad
4  litem applications about two weeks before removal, the state court did not issue summons until
5  two weeks after removal. *See* Dkt. No. 13 at ECF 10-14; Dkt. No. 26 at ECF 2, 3. Under these
6  circumstances, the parties' principle point of contention is whether the forum defendant rule, 28
7  U.S.C. § 1441(b)(2), should be construed to permit the Michaels and Monterey Bay defendants'
8  snap removal where the plaintiffs had no prior opportunity to effect service.

Courts are divided on the permissibility of snap removals, and the issue remains an open question in the Ninth Circuit. *See Casola v. Dexcom, Inc.*, 98 F.4th 947, 950 n.1, 964 & n.17 (9th Cir. 2024). While courts outside the Northern District of California vary in their interpretation of the forum defendant rule, most courts in this District have permitted snap removals, finding that the plain language of section 1441(b)(2) permits a defendant to remove an action prior to receiving proper service, even when the defendant is a citizen of the forum state. *See Hayes v. vCom Sols., Inc.*, No. 25-cv-02502-SI, 2025 WL 1276228, at *2 (N.D. Cal. May 2, 2025) (collecting cases). *Cf. In re Roundup Products Liability Litig.*, No. 16-md-02741-VC, 2019 WL 423129 (N.D. Cal. Feb. 1, 2019) (rejecting snap removal). However, several courts have recognized that snap removals based on a literal interpretation of the "properly served and joined" language of section 1441(b)(2) "can promote gamesmanship" in certain circumstances. *See Hayes*, 2025 WL 1276228, at *2 (citing *World Fin. Grp. Ins. Agency v. Olson*, No. 24-cv-00480-EJD, 2024 WL 730356, at *5 (N.D. Cal. Feb. 22, 2024)); *see also Whyte Monkee Prods., LLC v. Netflix, Inc.*, 730 F. Supp. 3d 947, 953 (N.D. Cal. 2024) (expressing "skeptic[ism] that the removal statute should be construed to permit snap removal," but denying remand where court had federal question and supplemental jurisdiction).

Although the Ninth Circuit has not addressed the propriety of snap removals, it has held that where a defendant conducts an "even snappier" removal before a complaint is officially "filed" in the state court—a so-called "super" snap removal—the removal is premature and thus ineffective. *Casola*, 98 F.4th at 949, 965. In so holding, the Ninth Circuit observed that "[a] case

1   will normally become removable as of the filing date shown on the endorsement stamped on the
2   complaint when it is entered into the court's records[.]" *Id*. at 962.  While *Casola* held that
3   removal is premature if it is made "pre-*filing* of the underlying complaints in state court," *id*. at
4   950, *Casola* did not address removals that are "premature" in the sense briefed by the parties and
5   presented to this Court, i.e., where plaintiffs had no opportunity to effect service because
6   summons had not issued.  Nor is an issue regarding a lack of summons presented in any of the
7   three appellate decisions directly addressing (and permitting) snap removals.  *See Texas Brine Co.,*
8   *LLC v. Am. Arbitration Assoc., Inc.*, 955 F.3d 482 (5th Cir. 2020); *Gibbons v. Bristol-Myers*
9   *Squibb Co.,* 919 F.3d 699 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest.*, 902 F.3d
10  147 (3d Cir. 2018).

There are competing California district court decisions that address whether the forum defendant rule requires an opportunity to effect service before removal.  Plaintiffs point out that in at least one case involving a snap removal after the complaint was filed, but before the state court issued summons, a court in the Central District of California concluded that section 1441(b)(2) contemplates that a plaintiff must have at least some opportunity to effect service before removal, or the forum defendant rule would otherwise lead to absurd results.  *See Vallejo v. Amgen, Inc.*, No. 13-cv-03666 BRO (MANx), 2013 WL 12147584, at *3 (C.D. Cal. Aug. 30, 2013) (granting motion to remand where summons was issued less than three hours after removal, stating that "[i]f defendants were permitted to remove a case before the plaintiff even had the opportunity to serve them, this would effectively circumvent Congress's entire statutory scheme and render § 1441(b)(2) superfluous.").  The Court has found at least one other decision from the Central District of California, similarly rejecting a snap removal made before summons could be issued due to a pending guardian ad litem application.  *See Reyes v. Harbor Freight Tools USA, Inc.*, No. 2:25-cv-000257-AB-JPR, 2025 WL 1683163, at *4 (C.D. Cal. June 16, 2025).  By contrast, the Michaels and Monterey Bay defendants note that at least one court in this District expressly rejected an argument that the forum defendant rule requires that plaintiffs have a meaningful opportunity to effect service before removal.  *See Global Indus. Inv. Ltd. v. Chung*, No. 19-cv-07670-LHK, 2020 WL 2027374, at *4-5 (N.D. Cal. Apr. 28, 2020).  Although *Global Industries*

United States District Court
Northern District of California

10

did not appear to involve a situation where service could not be effected because summons had not issued, the court rejected the plaintiff's "attempt to rewrite Section 1441(b)(2) to add a requirement that a plaintiff have a 'meaningful opportunity to serve' a defendant before allowing for pre-service removal. *Id.* "Rather," the court concluded that "the plain text of Section 1441(b)(2) governs, and that text permits a defendant to remove an action prior to receiving proper service, even when the defendant resides in the state in which the plaintiff filed the state claim." *Id.* (cleaned up; quotations and citation omitted).

      Under the circumstances presented here, the Court questions whether snap removal is consistent with Congressional intent, and shares the concerns expressed by other courts that such removals could promote gamesmanship by defendants, particularly where the purpose of removal based on diversity jurisdiction and the purpose of the forum defendant rule do not appear to be served. For example, *Hayes* concerned a snap removal by a "fast-acting in-state defendant" before the out-of-state plaintiff received from the state court all documents necessary for service.[6] *Hayes*, 2025 WL 1276228, at *2. Although *Hayes* allowed the snap removal, noting "the importance of consistent holdings within the Northern District [of California]," the court remarked that the case "present[ed] the most severe example of snap removal" and "suggest[ed] an element of gamesmanship in defendant's removal of the action." *Id.*; *see also Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) ("Because the likely purpose of this ['properly joined and served'] language is to prevent gamesmanship by plaintiffs, . . . we cannot believe that it constrains the district court's discretion [regarding plaintiff's voluntary dismissal] under Rule 41(a)(2) to undo *Defendants*' gamesmanship in the circumstances at bar."). Other courts have noted that while the legislative history of section 1441(b)(2) provides no guidance, the purpose of the "properly joined and served" language in the forum defendant rule is to prevent a plaintiff from fraudulently joining a defendant in order to block removal. *See Encompass.*, 902 F.3d at 153. Nonetheless, courts allowing snap removal have also noted that "failing to further a purpose is not equivalent to the

---

[6] The documents at issue in *Hayes* were noted to include a Notice of Case Assignment. *See Hayes*, 2025 WL 1276228, at *1, *2.

11

1  purpose's impairment." *Global Indus.*, 2020 WL 2027374, at *4 (concluding that snap removal
2  does not contravene anti-fraudulent joinder purpose of forum defendant rule) (cleaned up) (citing
3  *Encompass*, 902 F.3d at 153). Those courts also note that "[a]bsurdity . . . cannot justify a
4  departure from the plain text of the statute" because "Congress may well have adopted the
5  'properly joined and served' requirement in an attempt to both limit gamesmanship and provide a
6  bright-line rule keyed on service, which is clearly more easily administered than a fact-specific
7  inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Gibbons*,
8  919 F.3d at 706; *see also Global Indus.*, 2020 WL 2027374, at *4 (same).

9  In the present case, it appears to be undisputed that several (if not all) of the defendants are
10 California corporations or have members who are California citizens. Thus, there appears to be no
11 concern or need to protect out-of-state defendants from potential prejudice. *See Lively*, 456 F.3d
12 at 940; *Hayes*, 2025 WL 1276228, at *2. Additionally, there is no argument or suggestion that any
13 of the defendants has been fraudulently joined. It thus appears that the Michaels and Monterey
14 Bay defendants employed snap removal as a tactical maneuver, not to prevent potential prejudice
15 to out-of-state defendants or avoid fraudulent joinder, but to circumvent plaintiffs' choice of the
16 state court as a forum.

17 At the same time, however, there is no dispute that plaintiffs' complaint was officially filed
18 in the state court on November 18, 2024, as reflected in the state court's file-stamped
19 endorsement. *See* Dkt. No. 27, Ex. C. Pursuant to the rule adopted in *Casola*, the present action
20 thus "became a pending civil action *removable* under 28 U.S.C. § 1441(a)" as of November 18,
21 2024. *Casola*, 98 F.4th at 962-63 (emphasis added). While *Casola* notes that the plaintiff "had no
22 way to prevent [the defendant] from effecting a snap removal" until the state court issued
23 summons, *see id*. at 962, as discussed above, *Casola* addressed only the propriety of "super" snap
24 removals, which is not an issue in the present action, *see id*. at 950, 965.

25 This case became removable on November 18, 2024, and the Michaels and Monterey Bay
26 defendants removed it before any defendant was served. The Court agrees with the majority of
27 courts in this District that the plain language of section 1441(b)(2) does not prohibit pre-service
28 removal or removal before plaintiffs had an opportunity to serve, and that nothing in the plain text

of the statute indicates that the Court may or should remand if it believes removal does not further the purposes of the diversity removal provisions and/or the forum defendant rule.  Similarly, the Court cannot say that permitting defendants' snap removal would lead to "absurd" results.

Accordingly, the Court concludes that the forum defendant rule does not require remand. As diversity jurisdiction is undisputed, plaintiffs' motion for remand is denied.

**IV.   CONCLUSION**

Based on the foregoing, plaintiffs' motion to remand is denied.

**IT IS SO ORDERED.**

Dated: July 3, 2025

Virginia K. DeMarchi
United States Magistrate Judge

13