UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JONATHAN MIKKELSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAELS MANAGEMENT SERVICES LLC, et al., <br><br> Defendants. | Case No. 24-cv-09504-VKD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. No. 46 |

Defendants Michaels Management Services, LLC, The Michaels Organization, LLC, Monterey Bay Manager, LLC, and Monterey Bay Military Housing LLC (collectively, "defendants")[1] move pursuant to Rule 12(b)(6) to dismiss certain claims asserted in plaintiffs' first amended complaint ("FAC"). Dkt. Nos. 46, 50. Plaintiffs oppose the motion. Dkt. No. 49. Upon consideration of the moving and responding papers,[2] as well as the oral arguments presented, the Court grants defendants' motion to dismiss the FAC in part and denies the motion in part, with leave to amend.[3]

---

[1] Defendant Professional Asbestos Removal Corporation ("PARC"), which answered the first amended complaint (Dkt. No. 45), takes no part in the present motion to dismiss. References to "defendants" in this order do not include PARC.

[2] As discussed below, defendants' reliance on the declaration of their counsel in support of the present motion is improper, and the declaration has not been considered.

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 9. 21.

## I. BACKGROUND

Plaintiffs Jonathan and Alyssa Mikkelson and their minor children N.M., L.M., M.M., A.M., and E.M. (collectively, "plaintiffs" or "Mikkelsons") sue for personal injuries they claim they sustained as a result of toxic mold contamination and substandard living conditions they experienced while living at The Parks at Monterey, a privatized housing project on the former Fort Ord military installation in Monterey, California. According to the FAC, the operative complaint, the Mikkelsons lived at the subject property from June 13, 2022 until around May 31, 2023. Dkt. No. 44 ¶ 18. The Mikkelsons allege that during an initial walk-through, they observed discolored bathroom floors, unaware at that time that the discoloration was due to long-standing moisture and toxic mold, later found in the subsurface of the property. *Id*. ¶ 29. The Mikkelsons further allege that several months later, they noticed water stains and other signs of moisture on the kitchen ceiling. *Id*. ¶ 30. From the day they moved into their home, the Mikkelsons say that they experienced issues due to mold infestation, including foul odors and discolored and cracking caulk, and that they began to develop health-related issues, such as respiratory illness, lingering coughs, dry scalp, hair loss, skin conditions, high fevers, swollen tonsils, mouth sores, cognitive issues, bloody noses, and Mr. Mikkelson's "borderline COPD-level lung function." *Id*. ¶¶ 22, 35-42. The FAC alleges that, despite knowing of the Mikkelsons' concerns about mold and other airborne irritants, defendants repeatedly, and fraudulently, represented that the property was habitable, free of known defects, and safe to live in. Defendants allegedly also denied the Mikkelsons' repeated requests for past maintenance records. *See id*. ¶¶ 23-28, 31-33, 46, 56, 65, 68. The FAC further alleges that defendants made only "superficial and ineffective attempts to address" the many problems the Mikkelsons reported. *See id*. ¶¶ 42-49, 56-66, 81.

According to the FAC, on May 31, 2023 defendants (acting on instructions from the Army) displaced the Mikkelsons from their home "because it was making [p]laintiffs sick." *Id*. ¶ 50. Defendants did not provide temporary housing, forcing the Mikkelsons to pay out-of-pocket for Airbnb lodging from May 31, 2023 to June 12, 2023. *Id*. ¶ 51. Although the Mikkelsons eventually were placed in temporary housing on June 12, 2023, they allege that shortly after moving in, they noticed that the temporary housing had "plumbing issues, sewage from the toilets

overflowing into the yard, and significant paint and drywall cracking near the windows due to improper framing, amongst other issues." *Id*. ¶ 52.

Meanwhile, defendants allegedly locked the Mikkelsons out of their leased home, and refused to give them reasonable access to the premises, even though the Mikkelsons say that they were still entitled to possession of their belongings, which remained inside. *Id*. ¶¶ 53-55. Additionally, the Mikkelsons allege that the remediation of the subject property was delayed when defendants unilaterally changed remediation companies and decided to use defendant PARC, which reportedly "does business with [d]efendants on a consistent basis and downplays concerning issues at units they remediate or refuses to produce remediation reports." *Id*. ¶¶ 58, 59. The Mikkelsons maintain that the subject property was not adequately or properly remediated, and presently remains infested with toxic mold. *See id*. ¶¶ 60-68. When confronted by the Mikkelsons with photos of the subject property, defendants allegedly responded with "gross misrepresentations, gaslighting, and deflection," telling the Mikkelsons that the photos revealed "staining," "water that the kids splashed out of the bath," or "fugitive shower water." *Id*. ¶¶ 62, 63. The Mikkelsons maintain that the property contains "grotesquely alarming sewage leaks and highly dangerous levels of mold under the subsurface that were never tested." *Id*. ¶ 63.

Due to "the presence of mold," the FAC further alleges that the Mikkelsons' "household goods and all of their personal property were ruined"; defendants "inexplicably cancelled their superficial cleaning of [the Mikkelsons'] possessions"; and the Mikkelsons were "forced to discard most of their personal possessions, and now continue to suffer from financial, physical, and emotional harm." *Id*. ¶¶ 69, 70.

Defendants allegedly keep two sets of maintenance records—one accurate, and the other falsely presenting a semblance of "responsiveness and safety," and "satisfactory completion of maintenance work orders when no such repairs or remediation had ever occurred." *See id*. ¶¶ 75-81. The Mikkelsons believe that defendants keep these false records as part of a cover-up scheme, and give the false records to the Army, which has no formal auditing system and operates on the honor system, thus "incentiviz[ing] [d]efendants' behavior." *Id*. ¶¶ 77, 79, 80.

The Mikkelsons say that, after repeated pressure to move back into their home, they

3

declined to do so, noting that "there was no post-remediation testing done and [d]efendants could not guarantee that the family would be safe." *Id*. ¶ 71. Defendants allegedly told the Mikkelsons that their only choices were to move back into their home, stay in the temporary housing, or leave the base. *Id*. ¶ 72. After being served with a Notice to Quit their home, the Mikkelsons allege that they were forced to remain in temporary housing and to relinquish their lease on January 25, 2024. *Id.* ¶ 73.

Aside from mold issues, the Mikkelsons say that they also experienced other persistent problems that were dangerous and severely affected their enjoyment of their home, including "plumbing issues, dangerous flooring conditions, persistent odors from fixtures, unsanitary and dangerous bathroom fixtures, dangerously ill-maintained appliances, dangerously neglected dryer exhaust venting, a faulty door latch that left the Plaintiffs and their belongings consistently unsecured, and other issues." *Id*. ¶ 83.

On November 18, 2024, the Mikkelsons filed a complaint in the Monterey County Superior Court, asserting twelve claims for relief based on state and/or common law: (1) negligence, (2) negligent maintenance of premises, (3) fraud, (4) negligent misrepresentation, (5) breach of contract, (6) breach of the covenant of quiet enjoyment, (7) nuisance, (8) breach of implied warranty of habitability, (9) statutory breach of warranty of habitability (California Civil Code §§ 1941, 1941.1, 1942.4), (10) wrongful eviction (California Civil Code § 789.3), (11) intentional infliction of emotional distress, and (12) unfair competition (California Business & Professions Code § 17200, *et seq*.). *See* Dkt. No. 27, Ex. C.

On December 30, 2024, defendants removed the matter to this Court, asserting federal question and diversity jurisdiction under 28 U.S.C. §§ 1331, 1332. *See* Dkt. No. 1; Dkt. No. 27 ¶ 5. On January 6, 2025, defendants answered the complaint. Dkt. No. 5.

Plaintiffs filed a motion to remand, which the Court denied on July 3, 2025. *See* Dkt. No. 30. Although defendants did not establish that the action was removable based on federal question jurisdiction, the parties agreed that the requirements for diversity jurisdiction are satisfied. *See id*. at ECF 7; *see also* Dkt. No. 26 at ECF 3. The Court concluded that the forum defendant rule did not require remand. Dkt. No. 30.

4

Pursuant to a stipulation and order (Dkt. No. 43), on September 22, 2025 plaintiffs filed their FAC (Dkt. No. 44). The FAC eliminates allegations concerning similar issues at other military housing facilities, and focuses on allegations concerning the Mikkelsons and their housing at The Parks of Monterey. *See* Dkt. No. 44. The FAC continues to assert all the same claims for relief as those in the Mikkelsons' original complaint. *See id*. Defendants now move to dismiss the FAC, arguing that the FAC fails to allege sufficient facts supporting plausible claims for fraud, negligent misrepresentation, and unfair business practices, as well as for breach of contract.

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

A complaint should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

1    A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).[4]

## III. DISCUSSION

### A. Rule 8 and Rule 9 Pleading Requirements

Defendants argue that the FAC, as a whole, does not satisfy Rule 8's notice requirements or Rule 9's heightened pleading requirements for fraud-based claims. The gravamen of defendants' motion is that the FAC's allegations refer to defendants as an undifferentiated group and fail to distinguish between them. The Mikkelsons argue that they have adequately identified each defendants' role and provided sufficient detail, at the pleading stage, to meet the pleading requirements of Rules 8 and 9.

Rule 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (cleaned up; citation omitted). "Where numerous defendants are 'lumped together' without explanation, a plaintiff's allegations may be inadequate," *Villalpando v. Exel Direct Inc.*, Nos. 12-cv-04137 JCS, 13-cv-03091 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014), and "a complaint which 'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2),'" *Adobe Sys., Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (quoting *Gen- Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996)). However, such "group pleading" is not necessarily deficient or fatal to a complaint, if the complaint still gives defendants fair notice of the claims against them. *See Adobe Sys., Inc.*, 125 F. Supp. 3d at 964; *see also In re*

---

[4] In support of their motion to dismiss, defendants submitted the declaration of their counsel. *See* Dkt. No. 47. As there is no indication that the declaration was submitted for any purpose for which materials outside the pleadings properly may be considered, the Court has not considered that declaration in resolving the present motion to dismiss.

*Pac. Fertility Ctr. Litig.*, No. 18-cv-01586-JSC, 2019 WL 3753456, at *3 (N.D. Cal. Aug. 8, 2019). Without resorting to generalized allegations against defendants as a whole, a plaintiff must identify what action each defendant took that caused the plaintiff's harm. *Adobe Sys., Inc.*, 125 F. Supp. 3d at 964 (internal quotations and citation omitted). "Put another way, a plaintiff's allegations must provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them, including what conduct is at issue." *Id*. (internal quotations and citation omitted).

Under Rule 9(b), allegations of fraud or mistake must be pled "with particularity." Fed. R. Civ. P. 9(b). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (citations and quotations omitted). This includes pleading "the who, what, when, where, and how of the misconduct charged." *Whiteside v. Kimberly Clark Corp*., 108 F.4th 771, 785 (9th Cir. 2024) (citation and quotations omitted).

The FAC alleges that each of the defendants is "the owner, landlord, management company, lessor, and/or operator" of the subject property, and that each defendant "participated in the ownership, management, leasing, maintenance, and/or attempted negligent repair" of the property. *See* Dkt. No. 44 ¶¶ 8-11. The FAC also names several individuals, who are said to be defendants' employees, agents, or representatives, as well as the dates of their interactions where possible, alleging that these individuals generally "identif[ied] themselves as representatives of The Parks at Monterey Bay." *See id*. ¶¶ 27, 32, 43, 44, 46, 47, 63, 81, 142. The FAC does not provide further specificity distinguishing each defendant.

The FAC is unclear as to the connection (if any) between any particular defendant and any other defendant. Nor does the FAC indicate the Mikkelsons' theory for holding defendants jointly liable for plaintiffs' claimed injuries. Instead, the FAC alleges, in blanket and conclusory fashion, that each defendant is liable as an owner, landlord, manager, lessor, and/or operator of the subject property. Dkt. No. 44 ¶¶ 8-11; *see also id*. ¶¶ 15-17. Although the FAC alleges facts pertaining to conduct by specific individuals, there are no facts that tie any defendant to the conduct of any particular individual. To the extent the Mikkelsons contend that defendants acted as a collective,

the FAC alleges no facts supporting such collective action. While the Mikkelsons cannot reasonably be expected to know, without the benefit of discovery, precise details about which individuals are associated with which defendants and what role each defendant played in the underlying events, the Court agrees that additional specificity is required to meet Rule 8's notice requirements and Rule 9's heightened pleading requirement. *See, e.g., D'Antonio v. Monterey Bay Military Housing, LLC*, Nos. 4:21-cv-02607-YGR, 4:21-cv-04535-YGR, 2021 WL 5771139, at *4 (N.D. Cal. Dec. 6, 2021) (allegations sufficient to satisfy Rule 8 and Rule 9, where plaintiffs specified that two defendants were sued as landlord and property manager, respectively, and included specific allegations regarding the conduct of particular individuals); *see also Moran v. Bromma*, 675 F. App'x 641, 646 (9th Cir. 2017) (plaintiff's allegations grouping defendants were sufficient where complaint alleged that defendants referred to themselves collectively as "ENTRUST," and acted together in sending out false account statements); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) ("A plaintiff must identify the role of each defendant in the alleged fraudulent scheme. There is no flaw in a pleading, however, where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct.") (quotations and citation omitted); *Martifer-Silverado Fund I, LLC v. Zhongli Sci. & Tech. Grp. Co.*, No. 19-cv-04243-YGR, 2020 WL 5500381, at *5 (N.D. Cal. Sept. 11, 2020) ("[W]hile plaintiff attributes some conduct to "the Parents" collectively, the FAC contains numerous allegations regarding the role each defendant played in the scheme to induce plaintiff to enter into agreements even though defendants could not fulfill their obligations thereunder."). *Cf. Maraldo v. Life Ins. Co. of the Sw.*, No. 11-cv-4972-YGR, 2012 WL 3204181, at *4 (N.D. Cal. Aug. 3, 2012) (although FAC identifies insurer's role in alleged fraudulent scheme, "the FAC does not sufficiently identify which defendant or defendants are the insurer here, and if both are not the insurer, what was the role of the other defendant."). Accordingly, the Court grants defendants' motion to dismiss the FAC on the ground that the "group pleading" allegations do not satisfy Rule 8 and Rule 9 requirements.

**B.     Fraud (Claim 3)**

The essence of the Mikkelsons' fraud claim is that defendants made "repeated fraudulent representations of habitability," and "fraudulently certified, falsified, and/or retroactively edited work orders complete and/or remediated, [knowing] that this work was not completed in a satisfactory matter, or not completed at all."  *See* Dkt. No. 44 ¶¶ 125-138.  To state a claim for fraud under California law, a plaintiff must allege: (1) a misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.  *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (Cal. 2003); *see also Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (Cal. 1996).  As discussed above, Rule 9(b) requires allegations of fraud or mistake to be pled "with particularity."  Fed R. Civ. P. 9(b).  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Neubronner* 6 F.3d at 671-72 (citations and quotations omitted).  This includes pleading "the who, what, when, where, and how of the misconduct charged."  *Whiteside*, 108 F.4th at 785 (citation and quotations omitted).

Defendants argue that the FAC does not satisfy Rule 9's heightened pleading requirements.  As confirmed at the motion hearing, defendants' principal contention is that the fraud claim is deficient because the FAC groups all defendants together and fails to sufficiently plead *who* engaged in the alleged fraudulent conduct or misrepresentations.  Defendants appeared to concede that the FAC otherwise is sufficient, at the pleading stage, to state a claim for fraud.  *See* Dkt. No. 52.  In *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007), cited by both the Mikkelsons and defendants, the Ninth Circuit explained that "there is no absolute requirement" for a complaint against several defendants to identify false statements made by each and every defendant.  *Swartz*, 476 F.3d at 764.  Even so, a complaint also cannot be "shot through with general allegations that the 'defendants' engaged in fraudulent conduct" while "attribut[ing] specific misconduct only to" some defendants.  *Id*. at 765.  That is not quite what the Mikkelsons' FAC does.  For the reasons discussed above, while the FAC alleges fraudulent conduct and statements by specific individuals, the Court agrees that the FAC does not allege sufficient facts tying any particular defendant to the

9

alleged fraudulent conduct or statements for purposes of Rule 9(b). To that extent, defendants' motion to dismiss the FAC is granted.

Defendants' motion to dismiss is otherwise denied, as the Court finds that the FAC alleges the "what, when, where, and how" of the fraud claim with sufficient particularity to put defendants on notice of the allegations they must defend. *See D'Antonio* 2021 WL 5771139, at *4 (allegations sufficient to satisfy Rule 9(b)'s heightened pleading standards where plaintiffs' complaints alleged that at the time plaintiffs signed their leases and moved into their respective homes, defendants' representatives stated that houses were safe to live in when they were not, and at the time repairs were made falsely represented that issues were resolved when they were not).

### C.    Negligent Misrepresentation (Claim 4)

The Mikkelsons' claim for negligent misrepresentation is based on largely the same conduct as the fraud claim. *See* Dkt. No. 44 ¶¶ 139-152. Defendants move to dismiss this claim, arguing that as with the Mikkelsons' fraud claim, the FAC's allegations group defendants together and do not meet Rule 9(b)'s heightened pleading requirements adequately identifying who made the alleged negligent misrepresentations.

Under California law, the elements of a claim for negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Alafi v. Cohen*, 106 Cal. App. 5th 46, 65 (Ct. App. 2024) (quoting *Ragland v. U.S. Bank Nat'l Ass'n.*, 209 Cal. App. 4th 182, 196 (Ct. App. 2012)). Although there is a question whether Rule 9(b)'s heightened pleading standard applies to a claim of negligent misrepresentation, *see Villegas v. Wells Fargo Bank, N.A.*, No. 12-cv-02004 LB, 2012 WL 4097747, at *7 (N.D. Cal. Sept. 17, 2012) (observing that the Ninth Circuit has not yet decided this question), the Mikkelsons do not appear to disagree that their pleading must meet this standard for purposes of resolving defendants' present motion.

Assuming Rule 9(b)'s heightened pleading standard applies, for the reasons discussed above with respect to the fraud claim, the Mikkelsons also fail to state a claim for negligent

misrepresentation insofar as the FAC fails to allege sufficient facts tying each defendant to the alleged wrongful conduct and the role of each of the four defendant entities. Defendants' motion to dismiss otherwise is denied, as the FAC sufficiently pleads the circumstances underlying the Mikkelsons' claim for negligent misrepresentation to put defendants on notice of the allegations they must defend. *See D'Antonio*, 2021 WL 5771139, at *4 (denying motion to dismiss negligent misrepresentation claim where same arguments were rejected with respect to fraud claim).

### D.     Breach of Contract (Claim 5)

The FAC identifies the contract at issue as the MHPI[5] Military Member Tenant Lease Agreement ("Lease") entered by the Mikkelsons and defendants on June 22, 2022. Dkt. No. 44 ¶ 154. According to the FAC, the Lease states, "'Owner is responsible for maintenance and repair of the Premises in accordance with applicable law (including, but not limited to, any safety and habitability requirements).'" *Id*. ¶ 156. Additionally, the FAC alleges that under California law, implicit in the Lease is a warranty of habitability that the subject property was fit for human habitation. *Id*. ¶ 155. The FAC claims that defendants breached the Lease "by failing to perform their central duties under the Lease," "failing to ensure that [the property] was fit for human habitation," and "failing to diligently repair and remedy the conditions affecting the habitation at the premises . . .." *Id*. ¶ 159. Defendants move to dismiss the breach of contract claim on the ground that the FAC improperly groups all defendants together, without clearly identifying which of the defendants is a party to the Lease or what provisions of the Lease allegedly were breached and how.

To state a claim for breach of contract under California law, a plaintiff must plead (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011). For the reasons discussed above, the FAC's "group pleading" allegations do not

---

[5] Although not defined in the FAC, "MHPI" is identified in the Mikkelsons' original complaint as the "Military Housing Privatization Initiative" established by Congress in 1996 to "provide[] military service branches with alternative authorities for construction, renovation, and management of military housing for families and unaccompanied personnel." *See* Dkt. No. 27 (Complaint ¶ 21).

11

satisfy Rule 8's notice requirements. The Mikkelsons should be able to identify the parties to their Lease. To the extent any defendants are not party to that Lease, the Mikkelsons must also plead factual allegations plausibly supporting a theory of liability as to any such defendant. To that extent, the Court grants defendants' motion to dismiss the contract claim. Defendants' motion to dismiss this claim otherwise is denied, as the FAC's allegations regarding the breach of the Lease are sufficient to give defendants notice of the nature of the claim.

### E. Unfair Competition, Cal. Bus. & Prof. Code § 17200 (Claim 12)

The FAC claims that defendants violated California's unfair competition law ("UCL") (*see* Dkt. No. 44 ¶¶ 224-236), which defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice . . .." Cal. Bus. & Prof. Code § 17200. At the motion hearing, plaintiffs agreed that their UCL claim focuses on defendants' alleged unlawful conduct. The gravamen of this claim is that defendants "made fraudulent representations about the Subject Property to induce Plaintiffs to enter into the Lease"; "unlawfully enriched themselves by not providing adequate and necessary repairs to unsafe conditions" at the subject property; and unlawfully collected rent while the property was uninhabitable. *See* Dkt. No. 44 ¶ 228.

For the reasons discussed above, the FAC fails to sufficiently plead the roles of each defendant and the relationships between the defendants. Defendants' motion to dismiss the UCL claim therefore is granted to that extent. *See Herron v. Best Buy Co. Inc.*, 924 F.Supp.2d 1161, 1169 (E.D. Cal. 2013) ("A defendant's liability [under the UCL] must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices.'") (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (Ct. App. 2002)); *Maraldo*, 2012 WL 3204181, at *5 ("Plaintiffs' failure to specify the roles and relationships here, again, results in a failure to plead the [UCL] claims sufficiently.").

## IV. LEAVE TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "should be freely granted when justice so requires," and "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotations and

citation omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Mikkelsons state that they can amend the FAC to include additional facts based on their review of public records and other documents. Additionally, the Court notes that the Mikkelsons make assertions in their opposition brief that are not reflected in the FAC, including allegations that all defendants managed the same property; employees did not identify themselves as being associated with a specific corporate entity; defendants keep unified maintenance records; and defendants operate a single system for maintenance requests. *See* Dkt. No. 49 at ECF 10-11. None of the *Foman* factors appear to weigh against amendment under the circumstances presented. The Mikkelsons are given leave to amend.

## V.     CONCLUSION

Based on the foregoing, defendants' motion to dismiss the FAC is granted in part and denied in part. The Mikkelsons are given leave to amend, limited to the claims addressed in this order and to address the deficiencies identified above. The amended complaint must be filed by **December 18, 2025**.

**IT IS SO ORDERED.**

Dated: November 20, 2025

Virginia K. DeMarchi
United States Magistrate Judge